IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD ALAN BROWN, | No. 4:22-CV-01153 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| OFFICER WEB, *et al.*, | |
| Defendants. | |

# MEMORANDUM OPINION

## MAY 30, 2024

Plaintiff Todd Alan Brown is currently incarcerated at the State Correctional Institution, Huntingdon (SCI Huntingdon) in Huntingdon, Pennsylvania. Prior to being transferred SCI Huntingdon, he was detained for a short time at the State Correctional Institution, Smithfield (SCI Smithfield), also located in Huntingdon, Pennsylvania. Brown filed the instant *pro se* Section 1983[1] action concerning allegedly deficient medical care he received as a pretrial detainee at SCI Smithfield. Presently pending are Defendants' motions to dismiss Brown's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court will grant in part and deny in part Defendants' motions.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.  **BACKGROUND**

In his original complaint, Brown alleged that he was transferred to SCI Smithfield on February 3, 2022, and that during February and March 2022 he received deficient medical care at that facility.[2] He claimed that he had arrived at SCI Smithfield with a serious injury to his finger for which he had previously undergone surgery and medical pin placement, and that during his time at SCI Smithfield "they fail[ed] to treat" him.[3]

The Court screened Brown's complaint as required by 28 U.S.C. § 1915A.[4] It dismissed that pleading for failure to state a claim for relief but granted leave to amend with respect to Brown's Section 1983 claims against the individual defendants.[5]

Brown then filed an amended complaint.[6] In his amended complaint, he appeared to be raising a claim under the Fourteenth Amendment[7] for deliberate indifference to serious medical needs. It is possible that his amended complaint additionally asserted state-law claims of medical malpractice and intentional infliction of emotional distress,[8] although such claims were largely undeveloped.

---

[2] Doc. 1 at 4.
[3] *Id.*
[4] *See generally* Docs. 8, 9.
[5] *See* Doc. 9 at 2 ¶¶ 6-9.
[6] Doc. 13.
[7] Because Brown was a pretrial detainee during his time at SCI Smithfield, his claims implicate the Fourteenth Amendment, not the Eighth. *See Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021); *Thomas v. Cumberland County*, 749 F.3d 217, 223 n.4 (3d Cir. 2014).
[8] *See* Doc. 13 at 7-8.

Brown also included two new unidentified defendants: a "head nurse" and a "nurse."[9]

The Court screened Brown's amended complaint pursuant to Section 1915A and determined that the only defendants against which Brown had plausibly alleged medical indifference were the unidentified head nurse and nurse.[10] The Court thus permitted Brown to pursue his claims against these defendants using temporary "Jane Doe" labels and dismissed the other defendants.[11]

The Court then began a lengthy and exhaustive process to help Brown identify the two Jane Doe defendants. The details need not be rehashed here but suffice it to say that, following extensive assistance by the Court and commendable cooperation by the Pennsylvania Department of Corrections,[12] Brown finally identified the "head nurse" as Kati Cruz and the "nurse" as Theresa Balum.[13]

Waivers of service of summons and copies of the amended complaint were mailed to Cruz and Balum, who timely waived service of process.[14] Cruz and Balum then moved to dismiss the amended complaint.[15] Among other deficiencies asserted, Cruz and Balum both raised concerns regarding the complete incoherency of Brown's *pro se* amended complaint and their resultant difficulty in responding

---

[9] *See id.* at 5, 6, 7, 8.
[10] *See* Doc. 16 at 5-7.
[11] *See id.* at 6-7.
[12] *See* Docs. 18-25.
[13] *See* Docs. 26, 27.
[14] *See* Docs. 28, 31, 39, 41.
[15] *See generally* Docs. 42, 50.

3

to that pleading.[16] As Balum aptly described the situation, "Brown's amended complaint improperly assert[ed] multiple claims against multiple defendants without specifying which of the defendants are responsible for which . . . acts or omissions, and/or which of the defendants the claim(s) are brought against."[17]

The Court ultimately agreed with Cruz and Balum regarding the confusion caused by Brown's *pro se* pleading. It construed their motions to dismiss as motions for a more definite statement under Rule 12(e) and ordered Brown to file a second amended complaint that clarified his claims against Cruz and Balum.[18] The Court additionally provided explicit pleading instructions for Brown regarding his second amended complaint.[19]

Brown timely filed a second amended complaint,[20] which is now the operative pleading. Defendants again move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[21] Those motions are fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but

---

[16] *See* Doc. 43 at 4; Doc. 51 at 14-15.
[17] Doc. 51 at 15.
[18] *See* Doc. 59 at 4-6.
[19] *Id.* at 4-5.
[20] Doc. 60.
[21] *See generally* Docs. 61, 63.

whether the claimant is entitled to offer evidence to support the claims."[22] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[23] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[24]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[25] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[26] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[27] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[28]

---

[22] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[23] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[24] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[25] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[26] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[27] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[28] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[29]

Because Brown proceeds *pro se*, his pleadings are to be liberally construed and his second amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[30] This is particularly true when the *pro se* litigant, like Brown, is incarcerated.[31]

## III. DISCUSSION

At the outset, the Court must determine what claims Brown is raising in his second amended complaint.[32] It is clear that the primary cause of action is deliberate indifference to serious medical needs, as this theme has persisted throughout the various iterations of his pleadings.[33] However, Brown also

---

[29] *Iqbal*, 556 U.S. at 681.
[30] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[31] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[32] *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); *Graham v. Connor*, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).
[33] For this claim, Brown invokes the Fourteenth Amendment's due process clause as well as "Article 1 Section 9" of Pennsylvania's constitution. *See* Doc. 60 ¶ 40. However, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized a private cause of action for damages under the Pennsylvania Constitution." *Klein v. Madison*, 374 F. Supp. 3d 389, 432 (E.D. Pa. 2019) (quoting *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) (nonprecedential)). Brown primarily requests monetary damages. *See* Doc. 60 ¶¶ 53-60. To the extent that Brown seeks monetary damages under the state constitution, any such claim must be dismissed with prejudice pursuant to Rule 12(b)(6). *See Pocono Mountain Charter Sch.*, 442 F. App'x at 687. However, Brown also seeks a declaration that his state constitutional rights were violated, which is an equitable remedy that is still available to him. *See id.* at 688.

6

cursorily mentions "retaliation,"[34] due process "denial of liberty,"[35] false arrest,[36] false imprisonment,[37] negligence,[38] and intentional infliction of emotional distress (IIED).[39]

The Court need not expend significant time on most of these claims. Brown's claims for retaliation, procedural due process, false arrest, false imprisonment, and IIED are completely undeveloped. He does not even attempt to plead the bare elements of these causes of action, let alone facts that would plausibly allege such constitutional or state-law torts.[40]

For example, Brown contends in one sentence that his transfer to SCI Huntingdon was retaliatory.[41] However, he does not allege that Cruz or Balum was involved in the transfer; he does not allege that he undertook protected First Amendment conduct prior to the transfer; he does not plausibly allege an adverse action by Defendants (or anyone else, for that matter)[42]; and he does not allege that

---

[34] Doc. 60 ¶ 39.
[35] *Id.* ¶ 41.
[36] *Id.*
[37] *Id.*
[38] *Id.* ¶ 42.
[39] *Id.* ¶ 43.
[40] *See Connelly*, 809 F.3d at 787 (explaining that mere legal conclusions may be disregarded).
[41] *See Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (explaining that, to state a First Amendment retaliation claim, plaintiff must allege (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action).
[42] Although a prison transfer can sometimes rise to the level of an adverse action, Brown's single allegation of being moved to an adjacent state correctional institution within the same town does not establish an adverse action for a First Amendment retaliation claim. *See Collazo v.*

7

the purportedly retaliatory transfer was caused or motivated by his protected conduct. While Brown includes additional allegations in his subsequent briefing, it is well settled that a plaintiff cannot amend his pleadings through a brief in opposition to a motion to dismiss.[43]

Brown also contends that his placement in the RHU for the two months he was detained at SCI Smithfield violated his due process rights, but he has not and cannot identify a protected liberty interest for this claim.[44] His false arrest and false imprisonment claims are even less developed, as Brown simply states the name of these torts without connecting them to any supporting facts. Moreover, Brown fails to allege how Balum and Cruz were involved in these state-law torts such that they could be liable. Finally, Brown invokes intentional infliction of emotional distress, but his allegations do not come close to meeting the rigorous

---

*Rozum*, 646 F. App'x 274, 276 (3d Cir. 2016) (nonprecedential) (explaining that inmate had failed to allege "how the prison transfer was an adverse action"); *cf. Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (noting that transfer to a distant prison where family could not visit could implicate adverse action); *Siggers-El v. Barlow*, 412 F.3d 693, 702, 704 (6th Cir. 2005) (finding that prison transfer which caused loss of prison job and limited access to plaintiff's attorney could amount to an adverse action); *Williams v. Wetzel*, No. 1:17-CV-79, 2020 WL 583983, at *8 (M.D. Pa. Feb. 6, 2020) (finding that prison transfer was adverse action where it "punitively detach[ed] Plaintiff from his loved ones and/or visitation" and affected his parole recommendation).

[43] *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

[44] *See Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995) (explaining that administrative or disciplinary segregation alone generally does not reflect an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that it implicates a protected liberty interest under the Fourteenth Amendment).

pleading requirements for this tort under Pennsylvania law.[45]  All these foregoing claims—to the extent they are asserted by Brown—fail to state a claim for relief and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Thus, the only claims against Cruz and Balum that remain in Brown's second amended complaint are (1) Fourteenth Amendment deliberate indifference to serious medical needs, and (2) state-law negligence or medical malpractice.[46]  Defendants challenge the pleading sufficiency of these causes of action.

### A.    Fourteenth Amendment Medical Deliberate Indifference

As noted above, Brown was a pretrial detainee during his time at SCI Smithfield.  Thus, his claims implicate the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's cruel-and-unusual-punishments provision.  However, it does not appear that the United States Court of Appeals for the Third Circuit has established or adhered to a different standard with respect to Fourteenth Amendment pretrial detainee medical care claims versus those raised by incarcerated individuals under the Eighth Amendment.[47]  Accordingly, the

---

[45]   A claim of IIED requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

[46]   Although Brown states "negligence" in his second amended complaint, (*see* Doc. 60 ¶ 42), he includes a certificate of merit under Pennsylvania Rule of Civil Procedure 1042.3, (*see id.* at p. 10).  It is therefore unclear whether Brown is asserting a professional negligence claim against Cruz and Balum, a simple negligence claim, or both.

[47]   This remains so even following the Supreme Court of the United States' decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which established a different standard for pretrial detainee excessive force claims.  *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 & n.23

9

Court will apply existing Eighth Amendment jurisprudence to Brown's Fourteenth Amendment medical indifference claims.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[48] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly plead "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[49] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[50]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of

---

(3d Cir. 2023) (applying Eighth Amendment standard to pretrial detainee's medical care claim); *see also Moore v. Luffey*, 757 F. App'x 335, 340 & n.2 (3d Cir. 2019) (nonprecedential) (rejecting plaintiff's argument to apply *Kingsley*'s holding to Fourteenth Amendment medical care claim and instead analyzing under Eighth Amendment jurisprudence); *see also Parker v. Butler County*, 832 F. App'x 777, 780 & n.1 (3d Cir. 2020) (nonprecedential) (applying Eighth Amendment standard to pretrial detainee medical care claim while acknowledging Fourteenth Amendment is source of right); *Miller v. Steele-Smith*, 713 F. App'x 74, 76 n.1, 78 (3d Cir. 2017) (nonprecedential) (same); *Goode v. Giorla*, 643 F. App'x 127, 129 & n.3 (3d Cir. 2016) (nonprecedential) (same); *Edwards v. Northampton County*, 663 F. App'x 132, 136-37 (3d Cir. 2016) (nonprecedential) (citing *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).

[48] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[49] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[50] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

injury.[51]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[52]  Claims sounding in mere medical negligence will not suffice.[53]

Brown recounts that he had surgery on his finger on January 31, 2022, and was transferred to SCI Smithfield on February 3, 2022.[54]  As part of his surgery, Brown avers that he had medical pins inserted into his left pinky finger.[55]  He maintains that, during his intake at SCI Smithfield, a doctor or physician's assistant "gave orders" that his finger should be cleaned and re-dressed on a daily basis.[56]

Brown's allegations regarding the conduct of Balum and Cruz are scant, comprising approximately one page of his ten-page second amended complaint.[57]  As to Balum, Brown alleges that—on an unspecified date—he complained to corrections officers that his finger was swollen and in pain, so they contacted Balum.[58]  Balum arrived, took Brown to the "med room on the RHU block," and attempted to clean his finger.[59]  During this process, Balum inadvertently pulled out one of the surgical pins.[60]  Brown claims that, when he complained to Balum

---

[51] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[52] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[53] *Rouse*, 182 F.3d at 197.
[54] Doc. 60 ¶¶ 13, 18.
[55] *Id.* ¶¶ 20, 25.
[56] *Id.* ¶ 21.
[57] *See id.* ¶¶ 26-33.
[58] *Id.* ¶ 26.
[59] *Id.* ¶ 27.
[60] *Id.*

11

that this pin was not supposed to be removed yet, Balum purportedly responded, "What do you want me to do about it?"[61] Brown avers that he answered, "Your job!" and then directed Balum to "call [her] supervisor or the head nurse in charge."[62] Balum complied with Brown's request and contacted the head nurse, defendant Cruz.[63]

Brown alleges that, when Cruz arrived, she stated, "You['re] the guy that fought with Mount Union Boro cops" and laughed.[64] According to Brown, Cruz then directed Balum to re-wrap Brown's finger and told him that he should fill out a sick call slip if he needed further treatment.[65] Brown recounts that the surgical pin was "confiscated" and no further medical action was taken at that time.[66] Several days later, Brown was seen again by a doctor or physician's assistant who prescribed antibiotics and further daily dressing for his finger.[67]

Upon review of Brown's allegations, it is clear that he has failed to state a medical indifference claim against Cruz. Brown alleges that he had contact with Cruz on a single day and makes much of the fact that Cruz allegedly laughed at him when she recognized that he had been in a prior physical altercation with local police officers.

---

[61] *Id.* ¶¶ 28-29.
[62] *Id.* ¶ 30.
[63] *Id.*
[64] *Id.* ¶ 31.
[65] *Id.*
[66] *Id.* ¶ 32.
[67] *Id.* ¶ 34.

However, despite Brown's assertions to the contrary, Cruz did not deny Brown prescribed medical treatment, deny reasonable requests for treatment, or deny treatment for non-medical reasons. Nor did she take any other action that could be considered violative of the constitution. Rather, as Brown himself admits, Cruz came to examine him when summoned by Balum and then provided medical care in the form of directing Balum to re-dress Brown's finger and telling him to submit a sick call request slip if he needed additional care. While Brown argues in his briefing that Cruz should have provided different or better treatment for his finger,[68] it is well settled that mere disagreement with a medical provider's professional judgment or treatment plan does not state a constitutional violation.[69] Moreover, Brown was seen again by a doctor or physician's assistant "several days later,"[70] demonstrating that he was not denied further medical care.

The same analysis applies to Balum. Although Brown plainly believes that Balum's treatment on the day in question was sub-par, his allegations of her actions that day do not implicate a constitutional infringement. Instead, Brown's

---

[68] *See* Doc. 66 ¶¶ 13-19, 25, 26.

[69] *See Lanzaro*, 834 F.2d at 346 (explaining that "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

[70] Doc. 60 ¶ 34.

claims regarding Balum's accidental removal of the surgical pin and her failure to recognize potential signs of infection sound in mere medical negligence, which does not meet the stringent standard for deliberate indifference to serious medical needs.[71]

Where Brown's Section 1983 claim against Balum differs from his claim against Cruz is that Brown alleges that Balum knowingly failed to provide prescribed treatment. Brown asserts that, during his intake, a doctor or physician's assistant ordered that his finger be cleaned and re-dressed daily. Brown further claims that, after the incident where the surgical pin was inadvertently dislodged, a doctor or physician's assistant again ordered that his finger be cleaned and dressed every day.[72] Brown alleges that Balum—the "medical nurse working in the RHU"—only came to treat him approximately once every three days.[73]

Liberally construed and taken as true, these allegations state a claim for deliberate indifference to serious medical needs. Although not explicitly alleged, it can be inferred from the second amended complaint that Balum, the nurse assigned to the RHU, would be apprised of the RHU inmates' medical issues and treatment requirements and would be informed if she were to provide daily wound care to a specific inmate. Brown maintains that, instead of providing daily care, Balum only

---

[71] *Rouse*, 182 F.3d at 197.
[72] Doc. 60 ¶ 34.
[73] *Id.*

14

came once every three days and his finger became infected. These allegations, while not proven, would likely amount to constitutionally deficient medical care if they were true.

In sum, Brown has stated a Fourteenth Amendment claim of deliberate indifference to serious medical needs against Balum but not Cruz.[74] The Court thus turns to Brown's remaining state-law claims.

### B.   Medical Malpractice

As noted, Brown appears to assert either a simple negligence claim or a medical malpractice claim (or both) against Balum and Cruz. However, it is evident from Brown's allegations that his claims sound in professional liability, *i.e.*, medical malpractice. The gravamen of Brown's second amended complaint is that Balum and Cruz provided deficient medical care with respect to his injured finger. As the Third Circuit has explained, a "critical feature" of a medical malpractice action is that it "turns on 'questions involving medical judgment.'"[75] Moreover, "[a] complaint 'sounds in malpractice' where 'the conduct at issue constituted an integral part of the process of rendering medical treatment.'"[76] That

---

[74]   For this reason, any declaratory claim under Article 1 Section 9 of the Pennsylvania Constitution against Cruz will also be dismissed, as the due process protections under Article 1 Section 9 are generally held to be coextensive with the due process protections of the Fourteenth Amendment. *See Commonwealth v. Sims*, 919 A.2d 931, 941 n.6 (Pa. 2007); *Commonwealth v. Moto*, 23 A.3d 989, 1002 (Pa. 2011) (Saylor, J., dissenting).

[75]   *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007) (nonprecedential) (quoting *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 322 (Pa. Super. Ct. 2007)).

[76]   *Id.* (quoting *Ditch*, 917 A.2d at 323).

15

is exactly what Brown's second amended complaint alleges. His claims, therefore, implicate medical malpractice, not common law negligence.

To that end, Brown has proffered a certificate of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3(a)(3), indicating that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim."[77] Absent exceptional circumstances, Brown will be bound by this certification, as the official note to Rule 1042.3(a)(3) states, "In the event that the attorney [or *pro se* litigant] certifies under subdivision (a)(3) that an expert is unnecessary for prosecution of the claim, in the absence of exceptional circumstances the attorney [or *pro se* litigant] is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation."[78]

The Court observes that Brown filed a different certificate of merit at the end of his second amended complaint.[79] That certificate appears to invoke Rule 1042.3(a)(2).[80] This second certificate is fatally flawed for two reasons. First, Brown's allegations against Balum and Cruz are not based on their supervision of other licensed professionals who allegedly fell below the professional standard of

---

[77] Doc. 44.
[78] PA. R. CIV. P. 1042.3(a)(3), Note.
[79] *See* Doc. 60 at p. 10.
[80] *Compare id., with* PA. R. CIV. P. 1042.3(a)(2).

16

care; rather, Brown takes issue with each Defendant's own professional conduct. Thus, Rule 1042.3(a)(2) simply does not apply.

Second, a *pro se* litigant who files a certificate of merit under Rule 1042.3(a)(1) or (a)(2) must simultaneously include the written statement supplied by "an appropriate licensed professional" indicating that there is a reasonable probability that there has been professional negligence and that this negligence caused the plaintiff's harm.[81] No such written statement from a licensed professional is attached to Brown's second certificate of merit.

For both reasons, the second certificate of merit is fatally deficient. Brown will therefore be bound by his initial certification under Rule 1042.3(a)(3) that expert medical testimony is unnecessary for the prosecution of his medical malpractice claims against Balum and Cruz.

### C. Official Capacity Claims

Brown sues both Defendants in their individual and official capacities.[82] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity. Furthermore, as

---

[81] *See* PA. R. CIV. P. 1042.3(e) ("If a certificate of merit is not signed by an attorney, the party signing the certificate of merit shall, in addition to the other requirements of this rule, attach to the certificate of merit the written statement from an appropriate licensed professional as required by subdivisions (a)(1) and (2)).

[82] *See* Doc. 60 ¶¶ 11, 12. Defendants do not address these official capacity claims.

to Brown's request for declaratory relief, the relief sought is not prospective in nature and therefore his official capacity claims fail.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[83]  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[84]  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[85]  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[86]

Brown seeks nominal, compensatory, and punitive damages, as well as other costs and fees.  To the extent those damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity.  Additionally, Brown's single request for a declaration that his state and

---

[83] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[84] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[85] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[86] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

federal constitutional rights were violated is retrospective, rather than prospective, in nature. Thus, all official capacity claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

### D. Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[87] Further leave to amend will be denied because Brown has repeatedly failed to cure numerous deficiencies with his pleadings even after "amendments previously allowed."[88] Brown, in fact, has had three opportunities to plead his claims concerning his pretrial detention at SCI Smithfield. To the extent that Brown's second amended complaint attempts to raise novel claims (like retaliation, procedural due process, false arrest, and false imprisonment) against new, unidentified defendants, those claims are deficient and must be dismissed. Additionally, this Court has already undertaken extensive efforts to identify Balum and Cruz and has made it clear that they are the only remaining Defendants in the instant case.

This case, therefore, will continue only as to the following claims in the second amended complaint: (1) Section 1983 Fourteenth Amendment deliberate

---

[87] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).
[88] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").

19

indifference to serious medical needs against Balum; (2) declaratory relief against Balum under Article 1 Section 9 of the Pennsylvania Constitution for alleged medical indifference; and (3) state-law medical malpractice against Balum and Cruz.

## IV. CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's official capacity claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge